**RECEIVED**

USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK

DATE _10 / 23 / 12_

*JPB*

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

KEITH LYNN DAVIS,                    CIVIL ACTION
        Petitioner                   SECTION "P"
                                     NO. 1:11-cv-00601
VERSUS

WARDEN, ELAYN HUNT CORRECTIONAL      JUDGE JAMES T. TRIMBLE
CENTER,                              MAGISTRATE JUDGE JAMES D. KIRK
        Respondent


                REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

        Before the court is a petition for writ of habeas corpus filed

pursuant to 28 U.S.C. § 2254, in forma pauperis, by pro se

plaintiff Keith Davis ("Davis") on April 12, 2011.   Davis is

contesting his 2003 conviction for second degree murder, by a jury

in the Ninth Judicial District Court in Rapides Parish, Louisiana,

for which he received a sentence of life imprisonment.   Davis is

currently confined in the Elayn Hunt Correctional Center in St.

Gabriel, Louisiana.

        Davis raises the following grounds for habeas relief:

        1. Davis was denied the effective assistance of trial
        counsel.

        2. The prosecutor failed to disclose exculpatory
        evidence.

        The Respondent answered the petition and admits Davis has

exhausted his state court remedies (Doc. 19).   Davis filed a

response to the answer (Doc. 22).   Davis' petition is now before

the court for disposition.

## Rule 8(a) Resolution

This court is able to resolve the merits of this habeas corpus petition without the necessity of an evidentiary hearing because there is no genuine issue of material fact that is relevant to the petitioner's claims, and the State court records provide the required and adequate factual basis necessary to the resolution of the habeas corpus petition. Moya v. Estelle, 696 F.2d 329, 332-33 (5th Cir. 1983); Easter v. Estelle, 609 F.2d 756, 761 (5th Cir. 1980); Habeas Corpus Rule 8(a).

## Standard of Review

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall be considered only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.   28 U.S.C. § 2254(a).

Under 28 U.S.C. § 2254 and AEDPA, which is applicable to habeas petitions filed after its effective date on April 24, 1996, habeas relief is not available to a state prisoner with respect to a claim that was adjudicated on the merits in the State court proceedings unless the adjudication of the claim (1) resulted in a decision that was *contrary to*, or involved an *unreasonable application of*, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an *unreasonable determination* of the

facts in light of the evidence presented in the State Court proceeding. Therefore, pure questions of law and mixed questions of law and fact are reviewed under Section 2254 (d)(1), and questions of fact are reviewed under Section 2254(d)(2). Martin v. Cain, 246 F.3d 471, 475-76 (5th Cir. 2001), cert. den., 534 U.S. 885, 122 S.Ct. 194 (2001), and cases cited therein.

A state court decision is "contrary to" clearly established Supreme Court precedent if the state court applies a rule that contradicts the governing law set forth in Supreme Court cases, or confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent. A state court decision falls within the "unreasonable application" clause when it unreasonably applies Supreme Court precedent to the facts. Martin, 246 F.3d at 476, and cases cited therein.

Facts

The facts of this case as set forth by the Louisiana Third Circuit Court of Appeal (Doc. 25, pp. 625-628), as follows:

> "Carlos Batiste was with Tommy Lee Coty on November 26, 2002. The two hung out in front of a house from approximately noon until the time of Coty's death. Batiste and Coty were talking when the Defendant approached Coty and asked, 'Why you talking about me?' Batiste testified that the conversation had nothing to do with the Defendant. Coty and the Defendant began 'passing words,' and the Defendant then asked Coty if he wanted to fight. During the fight, both Coty and the Defendant tripped on the curb and fell, and Coty ended up on top of the Defendant. Coty had the Defendant pinned, but let him up, saying, 'You see what I can do to you.'

3

Batiste testified that the fight lasted three minutes. Later, he testified it lasted ten minutes.

"At some point, the defendant retrieved a gun and shot Coty eight times.  The sequence of events, as testified to by Batiste, is somewhat contradictory.  Batiste agreed that immediately after the fight the situation seemed to have cooled off and he tried to get Coty to leave. However, the Defendant and Coty continued to 'pass words' for approximately five to fifteen minutes, but these words were not as harsh as those used prior to the fight. The Defendant then walked to the back part of the house and came back with a gun.  Batiste testified that once the Defendant had the gun, Coty and the Defendant continued to 'pass words.'  While the Defendant was holding the gun, Coty did not attack the Defendant nor move toward him, but was standing still.  During that time, Coty asked the Defendant: 'What do I owe?'  The Defendant then pulled the trigger twice, but the gun did not go off.  Batiste then saw the Defendant shoot Coty, who fell to the ground.  There was a pause after the first shot, but the other shots were continuous.  Thirty-five minutes elapsed between the time the Defendant walked up to Coty and the time Coty was shot.

"Randolph Hunter testified that he heard a lot of noise outside his residence so he went to the door at which time he saw two guys across the street wrestling.  After wrestling, the two came back into Hunter's yard and Hunter heard the Defendant say "Give me my gun."  Hunter then went back into his house.  Hunter went to his door a second time and observed Coty standing at the end of the porch.  At that time, the first shot was fired. Hunter heard the first shot, slammed his door, then heard a second shot.  Hunter additionally testified that there was seven to ten minutes between the time the Defendant and Coty quit wrestling and the time he heard the cocking or shifting of the gun.

"Melinda James testified that she awoke at approximately midnight and found the Defendant had kicked in her door. The Defendant walked to the back of the house to see his daughter and told James that he shot and killed someone. The Defendant later emptied his pockets and placed a gun on the table.

"Sergeant William Bates seized a .9mm from James' residence.  At the crime scene, he removed five bullets

4

from the ground underneath Coty's body and one from inside Coty's shirt. Sergeant Bates testified that the presence of the bullets in the ground suggests that Coty was lying on his back when the bullets found in the ground passed through his body. Two bullets were unaccounted for; therefore, sergeant Bates opined that Coty was probably not lying down when he was hit by those two bullets.

"Dr. Cameron Snider, an expert in the field of forensic pathology, performed an autopsy on Coty. Coty had a blood alcohol level of .0846. Coty also tested positive for hydrocodone, marijuana, and acetaminophen. There were eight gunshot wounds to Coty's body, which were indeterminate as to range. Dr. Snider discussed the injuries caused by each bullet, but could not determined in which order the injuries were inflicted.

"The first bullet described entered the back of the head, traveled along the scalp, and exited around the ear. The second bullet entered the left chin, and went through the bone, the tongue, and the right neck before exiting the back. The third bullet entered the left chest area going through the upper lobe of the left lung, the back portion of the sixth vertebrae in the thorax, and exited the back. The fourth bullet entered the left chest area, then passed through the junction of the neck and shoulder, fracturing the collar bone, disrupting the subclavian artery and vein, and exited the back. The fifth bullet entered the right side below the sixth rib, went through the lower lobe of the right lung, and exited through the fifth rib. The sixth bullet entered the body, went through the liver, then through the diaphragm muscle into the chest cavity, through the right top chamber of the heart and the esophagus, then exited the back through the level of the muscles between the sixth and seventh ribs. The seventh bullet entered the left hip area, went through the loops of the intestine, the left kidney, the sides and back of the second lumbar vertebrae, and exited the body. The eight bullet went into the back of the right arm.

"The shots that went into Coty's heart and arm caused survivable injuries. The shot that went through the chin was survivable with appropriate medical intervention. All other shots caused injuries that 'without rapid medical intervention, and even at times with rapid medical intervention, they would be considered fatal.'

The shots to the back of the head and the arm were inflicted when Coty's back was to the shooter.  In Dr. Snider's opinion, the shot to the chin was not the first shot inflicted.

"Michael Stelly was accepted as an expert in the field of firearms identification.  He testified that the eight cartridge casings submitted were fired from the gun submitted by police.  Three of the six bullets recovered at the scene were fired from that weapon.  However, Stelly was unable to determine, due to damage to the bullets, if the remaining three bullets were fired from the gun submitted.  The gun submitted could be fired as fast the trigger could be pulled."

## Law and Analysis

### Ground 1 - Ineffective Assistance of Counsel

Davis contends he was denied the effective assistance of trial counsel because his trial attorney failed to pursue the intoxication defense to the offense of murder with the specific intent to kill, or second degree murder, failed to call any witnesses at trial although Davis gave his attorney a list of names, failed to interview any potential witnesses, and was unprepared for the post-conviction hearing.  Davis also alleges he had ineffective assistance of counsel at arraignment because his attorney had a conflict of interest and failed to advise him to plead "not guilty and not guilty be reason of insanity" due to his voluntary intoxication.

To prevail on a habeas complaint of ineffective assistance of counsel a complainant must demonstrate that: (1) his counsel's performance was deficient; and (2) the deficient performance prejudiced his defense.   Jones v. Cain, 227 F.3d 228 (5th Cir.

6

2000); <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S.Ct. 2052 (1984). A defendant is prejudiced if there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceedings would have been different. To make that determination the court must examine the proceedings as a whole, giving due consideration to the weight of the evidence supporting the verdict and evaluating the alleged failings of counsel in that total setting. The court does not assess any alleged error in isolation. In an examination of state proceedings under 28 U.S.C. § 2254 the court will not reject an adjudication on the merits unless the action by the state court is found to be contrary to, or an unreasonable application of, clearly established federal law, or the state court's determination of the facts is manifestly unreasonable in light of the evidence. <u>Jones v. Cain</u>, 227 F.3d 228 (5th Cir. 2000), and cases cited therein.

A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight and to evaluate the conduct from counsel's perspective at the time. <u>Dowthitt v. Johnson</u>, 230 F.3d 733 (5th Cir. 2000), cert. den., 532 U.S. 915, 121 S.Ct. 1250 (2001), citing <u>Strickland</u>, 466 U.S. at 689. Thus, the court's scrutiny of counsel's performance is highly deferential. The court must be particularly wary of arguments that essentially come down to a matter of degrees, i.e., did counsel investigate enough or did counsel present enough mitigating

7

evidence?  Those questions are even less susceptible to judicial second-guessing.  Dowthitt, citing Kitchens v. Johnson, 190 F.3d 698, 703 (5th Cir.1999).

In a habeas proceeding alleging ineffective assistance of counsel, the petitioner has the burden of proof.  U.S. v. Chavez, 193 F.3d 375, 378 (5th Cir. 1999), citing Clark v. Collins, 19 F.3d 959, 964 (5th Cir.), cert. den., 513 U.S. 966, 115 S.Ct. 432 (1994).

### 1. Intoxication Defense

Davis contends his trial attorney was ineffective because he failed to pursue the intoxication defense to the offense of murder with the specific intent to kill, or second degree murder.

Prior to trial, Davis' defense counsel specifically agreed with the prosecutor to not pursue an intoxication defense (Tr. p. 406), and at Davis' post-conviction hearing, Davis' trial counsel testified that, to his knowledge, voluntary intoxication was not a defense to specific intent (Tr. p. 784).  Also, the prosecutor and defense counsel at the post-conviction hearing agreed (erroneously) that there was no diminished capacity defense for voluntary intoxication under Louisiana law (Tr. pp. 770-772) and the issue was not pursued at that hearing.  However, the judge at that hearing noted that Davis' blood alcohol level at the time of the offense was about .08 (Tr. p. 879).[1]

---

[1] The defense attorney questioned the accuracy of that statement (Tr. p. 879).

To obtain a second degree murder conviction, the State was required to prove that Davis shot Coty with the specific intent to kill or to inflict great bodily harm.  La.R.S.  14:30.1(1). Specific intent is defined further in La.R.S. 14:10(1) as: "... that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act."

Specific intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act.  La. R.S. 14:10(1).  Such a state of mind can be formed in an instant.  State v. Cousan, 94-2503 (La. 11/25/96), 684 So.2d 382, 390.  Specific intent is a state of mind and, as such, it need not be proven as a fact, but may be inferred from the circumstances of the transaction and the actions of the defendant.  State v. Davis, 411 So.2d 2, 5 (La. 1982).  Also, State v. Graham, 420 So.2d 1126, 1127 (La. 1982).  Thus, specific intent to kill may be inferred from a defendant's act of pointing a gun and firing at a person. State v. Jackson, 976 So.2d 279, 284 (La.App. 2d Cir. 2008), citing State v. Robinson, 2002-1869 (La. 4/14/04), 874 So.2d 66, cert. den., 543 U.S. 1023, 125 S.Ct. 658 (2004).  Also, State v. Davis, 411 So.2d at 6; State v. Nguyen, 05-KA-569 (La. App. 5th Cir. 2/3/06), 924 So.2d 258, 263.

Ordinarily, a defendant's intoxicated or drugged condition at

9

the time of an offense is immaterial *except* "where the circumstances indicate that an intoxicated or drugged condition has precluded the presence of a specific knowledge required in a particular crime." La.R.S. 14:15(2). Thus, voluntary intoxication may operate on limited occasions as an affirmative defense to a second degree murder charge. The burden is on the defendant to prove the existence of an intoxicated or drugged condition sufficient to negate the State's evidence establishing the requisite specific intent. State v. Journet, 93-764 (La. App. 3d Cir. 12/22/93), 629 SO.2d 1387, 1389, citing State v. Tezeno, 507 So.2d 291 (La. App. 3d Cir.1987).

Therefore, voluntary or involuntary intoxication is, and was at the time of Davis' trial, a clearly established defense to the specific intent crime of second degree murder, and defense counsel erred in agreeing not to pursue the defense. Davis has carried the first prong of his burden of proving ineffective assistance of counsel by proving his trial attorney erred in failing to pursue, or at least investigate, the defense of intoxication. However, Davis must also prove there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceedings would have been different

The judge stated in his ruling on Davis' motion for post-conviction relief that, regardless of whether Davis' counsel was ineffective, the evidence indicated that Davis was guilty of second

10

degree murder, noting that Davis remembered most details about his argument with Coty (Tr. p. 880).    It is also noted that, in response to questions by the judge at his post-conviction hearing, Davis testified that he had the specific intent to kill Coty, at least by the time he fired the third shot and with each shot thereafter (Tr. pp. 863-866).    On direct appeal, the Court of Appeal noted that Davis shot Coty in the head and abdomen, indicating a specific intent to kill Coty (Tr. pp. 630).

Davis has not offered any evidence as to the level of his intoxication (from both alcohol and powder cocaine), though the post-conviction hearing judge thought he had a .08% BAC.

Pursuant to the evidence before this court, Davis has not shown he was too intoxicated to be able to form the specific intent to kill Davis.    Although Davis' trial attorney arguably erred in foregoing the defense of intoxication, Davis has not proven actual prejudice arising from that error because Davis has not shown he was too intoxicated to form the specific intent to kill Davis.

Since Davis has not carried his burden of proving he had ineffective assistance of counsel at trial in this respect, this ground for relief is meritless.

### 2. Uncalled Witnesses

Next, Davis contends his attorney erred in failing to call any witnesses at trial and in failing to interview any potential witnesses, although Davis provided his attorney with a list of the

11

names of people he wanted called as witnesses on his behalf.  Davis contends they could have helped him prove he was too intoxicated to form the specific intent to kill Coty or that he killed Coty in self-defense.

Complaints of uncalled witnesses are not favored because the presentation of testimonial evidence is a matter of trial strategy and because allegations of how a witness would have testified are largely speculative.  Graves v. Cockrell, 351 F.3d 143, 155 (5th Cir. 2003), amended in other part, 351 F.3d 156 (5th Cir. 2003), cert. den., 541 U.S. 1057, 124 S.Ct. 2160 (U.S. 2004), citing Buckelew v. United States, 575 F.2d 515, 521 (5th Cir. 1978).  Also, Boyd v. Estelle, 662 F.2d 388, 390 (5th Cir. 1981).  Where the only evidence of a missing witness's testimony is from the defendant, the Court views claims of ineffective assistance with great caution.  Sayre v. Anderson, 238 F.3d 631, 636 (5th Cir. 2001), citing Lockhart v. McCotter, 782 F.2d 1275, 1282 (5th Cir.1986), cert. den., 479 U.S. 1030, 107 S.Ct. 873 (1987).  Unless a petitioner provides the court with affidavits (or similar matter) from the alleged favorable witnesses suggesting what they would have testified to, claims of ineffective assistance of counsel fail for lack of prejudice.  Sayre, 238 F.3d at 636.

In the case at bar, Davis appears to allege that his attorney should have called Shanika Gipson, Sherman Miller, Mike (no last name given), Lakesha Davis, Estenio Davis, and Donte Bryant.

According to Davis' brief, Bryant witnessed Coty confront and threaten to kill Davis several times. Davis also contends that, immediately before the time of the offense occurred, Davis was inside the home of Shanika Gipson with Gipson, Miller and Mike, doing drugs and drinking. Apparently, they could have testified as to Davis' drinking and drug use immediately before the offense. Davis testified at his post-conviction hearing that they were also eye-witnesses to the offense and could have testified that Coty told Davis something like, "if you don't kill me, I'm going to kill you" (Tr. pp. 841-847). They were not subpoenaed to testify at trial.

A subpoena was requested for Gipson to testify at the 2009 post-conviction hearing (Tr. p. 343), but no return was made on the subpoena and Gipson did not appear. Miller and "Mike" were not subpoenaed to testify at trial or at the post-conviction hearing, and Davis has not alleged specifically what they would have testified to. Lakesha Davis, Davis' sister, testified that Coty had a problem with Davis because Davis was sleeping with Coty's wife while Coty was incarcerated, Coty had confronted Davis while armed with a baseball bat, and Coty had cut Davis' mother's telephone lines and poured gasoline around her house as if to set it on fire when Davis was staying there (Tr. pp. 811-814). Lakesha further testified that Davis' trial attorney did not interview her or subpoena her to testify (Tr. pp. 812-816). The attorneys

stipulated that the testimony of Davis' mother, Estenio Davis, would have been the same as Lakesha's and that she was never interviewed by Davis' trial attorney (Tr. pp. 816-818).   Donte Bryant testified that Coty had confronted and threatened to kill both Davis and himself several times before the offense occurred (Tr. pp. 820-826).   Bryant testified that Davis' attorney did not interview him (Tr. pp. 826-829).

Davis testified at his 2009 post-conviction hearing that his trial counsel, Blane Williams met him only once, on October 3, 2003, to go over the State's evidence with him (Tr. pp. 838-839). Davis further testified that Williams stated in state court on August 11, 2003, when he moved to continue Davis' trial, that he had not had time to interview witnesses; August 11, 2003 was Davis' first trial date (Tr. p. 837). Davis contends he wrote four letters to Attorney Williams, advising him of the names of witnesses (Tr. pp. 844-847).   Davis' trial was October 13, 2003.

When asked whether he had visited Davis prior to trial, Davis' trial attorney, Blane Williams, testified that he had a meeting with Davis on October 3, 2003 (Tr. p. 779), and he probably spoke briefly to Davis after the pretrial conference on June 25, 2003 (Tr. p. 779).   Williams testified that trial was originally scheduled for August 11, 2003, but he appeared and asked for a continuance because he was not prepared and had not yet moved for or been provided discovery, and trial was postponed to October 13,

14

2003 (Tr. pp. 780-781).  Williams testified that he met with and
spoke to Davis several times, but he had not documented those
meetings and did not know what they discussed (Tr. p. 782).
Williams testified that he had no recollection of interviewing any
of the witnesses Davis had requested, he did not know why he had
not called any witnesses for Davis' defense, and that his case file
had been damaged by water (Tr. pp. 782-785).

Counsel's failure to interview eyewitnesses to a charged crime
constitutes constitutionally deficient representation.  Soffar v.
Dretke, 368 F.3d 441, 473-474 (5th Cir. 2004), citing Anderson v.
Johnson, 338 F.3d 382, 391 (5th Cir. 2003)(trial counsel's failure
to interview an eyewitness rose to the level of constitutionally
deficient performance given the gravity of the charge and the fact
that there were only two adult eyewitnesses to the crime; counsel
erred in relying exclusively on the investigative work of the
State, basing his own pretrial investigation on assumptions divined
from a review of the State's files), and Bryant v. Scott, 28 F.3d
1411, 1418 (5th Cir. 1994) (defense counsel provided ineffective
assistance in failing to interview two eyewitnesses and limiting
his pretrial investigation to examination of the prosecutor's file,
discussions with the accused, and a review of the indictment).

As stated by the Fifth Circuit in Soffar, 368 F.3d at 474-475,

"[A]n actual failure to investigate cannot be excused by
a hypothetical decision not to use its unknown results.
This Court has squarely rejected the State's rationale
here--that a failure to interview a witness is excusable

15

as a 'strategic decision' if the witness would not have been credible--holding that while a lack of credibility might support a strategic decision not to call a witness to testify at trial, we explained that a witness's character flaws cannot support a failure to investigate. Without so much as contacting a witness, much less speaking with him, counsel is 'ill-equipped to assess his credibility or persuasiveness as a witness.' ... Strickland simply does not 'require ... defer[ence] to decisions that are uninformed by an adequate investigation into the controlling facts and law.'"

Davis is serving a sentence of life imprisonment for second degree murder and, given the seriousness of the offense and the gravity of the punishment, counsel should have tried to investigate all known eyewitnesses. Compare, Bryant, 28 F.3d at 1417-1418. Since defense counsel offered no acceptable justification at the state post-conviction hearing for his failure to attempt to interview known eyewitnesses to the crime with which his client was charged, this failure is sufficiently deficient to satisfy the first prong of Strickland.

However, Davis has failed to satisfy the second prong of Strickland because he failed to demonstrate a reasonable probability that, but for his trial counsel's failure to interview and call his sister, his mother, "Mike," Bryant, and Miller as a witness at trial, the result of the proceeding would have been different and the trial court would have found it was self defense or that Davis was too intoxicated to form the specific intent to kill Coty.

Davis' witnesses also would not have shown Davis killed COty

16

in self-defense.   The state Court of Appeal thoroughly reviewed Davis' claim of self-defense/justifiable homicide on direct appeal and found that Davis initiated the confrontation with Coty, fought him, withdrew, then returned with a gun and shot Coty.   That decision is not based on an *unreasonable determination* of the facts in light of the evidence presented in the State Court proceeding. Davis was the aggressor and could not have reasonably believed, when he returned to confront Coty with a gun, that he was in imminent danger of losing his life or receiving great bodily harm (Tr. pp. 634-635).   Regardless of any testimony the witnesses would have offered as to threats previously made by Coty, Davis was not acting in self-defense at the time he shot and killed Coty.[2]

---

[2] A homicide is justifiable when committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger.  La. R.S. 14:20.  The danger need not be real but the person attacked must reasonably believe that he is in actual danger and that it is necessary to kill in order to save himself.  A person's belief that he is in danger of losing his life or receiving serous personal injury is not "reasonable" unless it is founded upon an actual physical attack or hostile demonstration by the deceased. Factors which should be considered in determining whether the defendant had a reasonable belief that the killing was necessary are the possibility of avoiding the necessity of taking human life by retreat, the excitement and confusion of the occasion, the possibility of avoiding the necessity of killing by using force or violence less than killing, and the party's knowledge of the assailant's bad character.  La. R.S. 14:20, Reporter's Comment and cases cited therein.  Also, State v. Brown, 640 So.2d 49, 492-93 (La. App. 3d Cir. 1994).  An aggressor or one who brings on difficulty, as a general rule, cannot claim the right of self-defense unless he withdraws from the conflict in good faith and indicates his intention of abandoning the difficulty. La. R.S. 14:21.

Therefore, Davis has not shown there is a reasonable probability that, had his witnesses testified at his trial, court would have found Davis did not have the specific intent to kill or inflict great bodily harm on Coty and the result of the proceeding would have been different.   Since Davis has not proven he was prejudiced by his defense counsel's failure to interview and call his witnesses, he has not proven he had ineffective assistance of counsel in this respect.   This ground for relief is meritless.

### 3. Post-Conviction Counsel

Davis contends his post-conviction counsel was ineffective because he was unprepared for the post-conviction hearing.

Prisoners do not have a constitutional right to counsel in state post-conviction proceedings.   Consequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings.   Coleman v. Thompson, 501 U.S. 722, 111 S.Ct. 2546 (1991), and cases cited therein.[3]   Therefore, this claim does not present a constitutional issue cognizable in habeas.   This ground for relief is meritless.

### 4. Counsel at Arraignment

Davis also alleges he had ineffective assistance of counsel at arraignment because his attorney failed to advise him to plead "not

---

[3] But see Martinez v. Ryan, 132 S.Ct. 1309, 1326 (U.S. 2012)(modifying Coleman in narrow holding that inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial).

guilty and not guilty be reason of insanity" due to his voluntary intoxication. Since Davis' attorney at arraignment was appointed only briefly for arraignment and Davis' subsequent attorney could at any time have moved to change Davis' plea to "not guilty not guilty by reason of insanity" due to intoxication, Davis has not shown prejudice arising from the fact that his attorney at arraignment did not advise him to plead "not guilty and not guilty by reason of insanity."

Davis also alleges his attorney at arraignment was the District Attorney's father and contends he had a conflict of interest. However, since the District Attorney was not present at Davis' arraignment, and Davis' counsel changed after arraignment, Davis has not proven an actual conflict of interest, nor has he shown any prejudice arising from the alleged conflict.

Therefore, Davis has not shown he had ineffective assistance of counsel at arraignment. This ground for relief is also meritless.

Ground 2 - Exculpatory Evidence

Davis also contends the prosecutor failed to disclose exculpatory evidence. Davis contends the police had statements by eyewitnesses to the offense, Sherman Miller, Mike ("Hot Boy Mike"), Estenia Davis, Lakesha Davis, Dominique Barnes, Pauline Brown, Stacy Jones, Rasheita Barnes, Jonathan Barnes, and Donte Bryan, which would have been favorable to Davis were not disclosed to him.

In Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196-97 (1963), the Supreme Court held that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution. Wilson v. Whitley, 28 F.3d 433, 434 (5th Cir. 1994), cert. den., 513 U.S. 1091, 115 S.Ct. 754 (1995), citing U.S. v. Bagley, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383 (1985). In order to establish that evidence falls within the purview of Brady, a petitioner must establish that the evidence was (1) suppressed, (2) favorable, and (3) material. Williams v. Whitley, 940 F.2d 132, 133 (5th Cir. 1991).

A habeas petitioner has the burden of proving facts in support of his claim. Unsupported conclusory allegations do not warrant habeas relief. Uresti v. Lynaugh, 821 F.2d 1099, 1103 (5th Cir. 1987); Wilson v. Butler, 813 F.2d 664, 671 (5th Cir.), on rehearing, 825 F.2d 879, 881 (5th Cir. 1987), cert. den., 484 U.S. 1079, 108 S.Ct. 1059 (1988).

Davis has not shown that any statements by the eyewitnesses were suppressed or that they were, in fact, exculpatory. Davis does not allege specifically what in the purported statements was exculpatory. Davis argues generally that some or all of these people who gave statements had seen him drinking and taking drugs, and knew Coty had threatened to kill or harm Davis several times

because Davis had an affair with Coty's wife while Coty was incarcerated. Davis also contends some of the statements show that Coty had cut Davis' mother's telephone land-lines and poured gasoline around the house as if to set it on fire.

These allegations, taken as true, are not exculpatory. Although they may explain why the fatal fight occurred, they do not prove a justifiable homicide in self-defense, as discussed above.

Since Davis has not carried his burden of proving the police or prosecutor withheld any statements or, if they did, that the statements were exculpatory, this ground for relief is also meritless.

<u>Conclusion</u>

Based on the foregoing discussion, IT IS RECOMMENDED that Davis' habeas petition be DENIED AND DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 2(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the District Judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the**

date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Pursuant to Rule 11(a) of the Rules Governing Section 2254 cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. **Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue.** *See* 28 U.S.C. § 2253(c)(2). **A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.**

THUS DONE AND SIGNED in Alexandria, Louisiana on the 23rd day of October 2012.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE